KENDALL BRILL & KELLY LLP
Robert E. Dugdale (167258)
 *rdugdale@kbkfirm.com*
Jeffrey M. Chemerinsky (270756)
 jchemerinsky@kbkfirm.com
10100 Santa Monica Blvd., Suite 2500
Los Angeles, California 90067
Telephone: 310.556.2700
Facsimile:  310.556.2705

Attorneys for Defendant Erik Fleming

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ERIK FLEMING,<br><br>　　　　Defendant. | Case No. 2:24-cr-00417-SPG-1<br><br>**DEFENDANT ERIK FLEMING'S SENTENCING MEMORANDUM**<br><br>**Date:　May 13, 2026**<br>**Time:　10:00 a.m.**<br>**Crtm:　5C**<br><br>Judge:　Sherilyn Peace Garnett<br>Crtm:　5C |

604497202

DEFENDANT ERIK FLEMING'S SENTENCING MEMORANDUM

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ....................................................................................... 1

II.   PERTINENT BACKGROUND FACTS RELEVANT TO MR. FLEMING'S SENTENCING ................................................................ 4

    A.    MR. FLEMING'S LIFE PRIOR TO HIS OFFENSE CONDUCT ........ 4

        1.    Despite a Childhood Marked by Abandonment and Hardship, Mr. Fleming Developed Into a Person of Exceptional Character as an Adult ................................................ 5

        2.    Mr. Fleming's Career Was Defined by Creative Achievement and Genuine Generosity Toward Others ............... 6

        3.    Mr. Fleming's Unwavering Commitment to Family, Faith, and Community ........................................................................... 7

        4.    Mr. Fleming Has Devoted Himself to Helping Others Avoid His Similar Struggles with Drug Addiction ...................... 9

    B.    MR. FLEMING'S OFFENSE CONDUCT AND POST-OFFENSE CONDUCT, INCLUDING HIS EXTRAORDINARY EFFORTS TO COOPERATE WITH THE GOVERNMENT AND ENGAGE IN TRANSFORMATIVE POST-OFFENSE REHABILITATION ....................................................................... 10

        1.    Mr. Fleming's Offense Conduct ............................................... 10

        2.    Mr. Fleming's Immediate and Fulsome Efforts to Cooperate With the Government Before Being Charged in This Case ............................................................................ 13

            (a)    Mr. Fleming Begins Cooperating With the Government the Very First Time He Has Contact With Law Enforcement in This Case ............................. 13

            (b)    The Government Utilizes the Cooperation Provided by Mr. Fleming During Its First Encounter with Him to Obtain a Search Warrant for Ms. Sangha's Residence That Results in the Seizure of Evidence Confirming She Was a Prolific Drug Trafficker ............. 16

            (c)    Mr. Fleming Supplies Truthful, Complete, and Reliable Evidence Concerning the Roles Played by Mr. Sangha, Mr. Iwamasa, Individual #1, and Individual #2 in Procuring Ketamine for Mr. Perry ......... 16

        3.    Mr. Fleming Promptly Accepts Responsibility for His Role In Procuring Ketamine for Mr. Perry that Resulted in His Death and Signs a Cooperation Plea Agreement with the Government ...................................................................... 18

604497202

i

**Kendall Brill & Kelly LLP**

10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

4. Mr. Fleming's Genuine Remorse for Having Engaged in the Serious Crimes for Which He Is being Sentenced ............... 19

5. Mr. Fleming Has Engaged a Transformative Post-Offense Rehabilitation Over the Two Years He Has Been on Pre-Trial Release Awaiting Sentencing ........................................... 20

III. THE PRESENTENCE REPORT .................................................................. 22

IV. MR. FLEMING IS ENTITLED TO A SUBSTANTIAL DEPARTURE OF NO FEWER THAN EIGHT TO TEN LEVELS UNDER 18 U.S.S.G. § 5K1.1 TO ACCOUNT FOR THE EXTRAORDINARY NATURE OF HIS COOPERATION .................................................................. 22

A. The Extraordinary Nature of Mr. Fleming's Cooperation .................... 22

1. Mr. Fleming's Cooperation Against Jasveen Sangha ............... 23

2. Mr. Fleming's Cooperation Against Kenneth Iwamasa ............. 25

3. Mr. Fleming's Cooperation Against Individual #1 and Individual #2 .................................................................. 26

B. The Factors Under U.S.S.G. § 5K1.1 Used to Measure the Value Provided by Those Who Cooperate With the Government All Favor Providing Mr. Fleming with a Substantial Sentencing Reduction to Account for His Cooperation ......................................... 27

1. Mr. Fleming's Cooperation Was Significant and Essential, Including to the Government's Ability to Identify, Apprehend, Successfully Prosecute, and Obtain a Lengthy Sentence Against a Much More Culpable Defendant in an Extremely High Profile Case ...................................................... 28

2. The Cooperation Mr. Fleming Provided Was Undeniably Truthful, Complete, and Reliable ............................................... 30

3. Mr. Fleming's Cooperation Was Extensive, and the Only Reason His Trial Testimony Was Not Required Was Because the Assistance He Provided Allowed the Government to Build an Overwhelming Case Against Ms. Sangha .......................................................................................... 30

4. Mr. Fleming Faces a Risk of Injury Due to the Highly Publicized Disclosure of His Cooperation with the Government ................................................................................... 31

5. Mr. Fleming's Cooperation Was Immediate and That Immediacy Not Only Brought Finality to This Case, It Did So at an Accelerated Pace ............................................................ 31

V. THE FACTORS SET FORTH UNDER 18 U.S.C. § 3553(a) FAVOR THE SENTENCE MR. FLEMING SEEKS ................................................ 32

Kendall Brill
& Kelly LLP

10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604497202

DEFENDANT ERIK FLEMING'S SENTENCING MEMORANDUM

A.      The Nature and Circumstances of the Offense and History and Characteristics of Mr. Fleming (§ 3553(a)(1)) ......................................33

B.      The Need for the Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment (§ 3553(a)(2)(A)) .................................................................34

C.      The Need for Deterrence (§ 3553(a)(2)(B)) .......................................35

D.      Protection of the Public (§ 3553(a)(2(C)).........................................35

E.      The Need to Avoid Unwarranted Disparities (§ 3553(a)(6))................36

VI.     CONCLUSION ..............................................................................................39

Kendall Brill
& Kelly LLP

10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Kimbrough v. United States*,
   552 U.S. 85 (2007) ..................................................................................32

*United States v. Udo*,
   963 F.2d 1318 (9th Cir. 1992) ................................................................27

**Statutes**

18 U.S.C. § 3553.............................................................................*passim*

21 U.S.C. § 841.......................................................................................18

21 U.S.C. § 846.......................................................................................18

28 U.S.C. § 994.......................................................................................27

**United States Sentencing Guidelines**

U.S.S.G. § 2D1.1 ....................................................................................19

U.S.S.G. § 5K1.1 ............................................................................*passim*

**Kendall Brill
& Kelly LLP**
10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604497202

i

## I.  **INTRODUCTION**

Erik Fleming's life had often been a rollercoaster ride of ups and downs, and in September 2023, he hit a new devastating low.  Mr. Fleming's stepmother, who rescued him from the traumatic childhood he endured while being pulled between his biological father and mother during a contentious divorce, and who Mr. Fleming considered his best friend, passed away after battling brain cancer and bouts of dementia.  Mr. Fleming had a front row seat to his stepmother's suffering and death, spending the last four months of her life at her bedside caring for her; and her death sent Mr. Fleming into a tailspin:  he relapsed into heavy drug use, sunk into a deep depression, and found himself jobless and penniless, living on the couch of his younger sister's home, feeling worthless, despondent, and alone.

At this time in his life, when a perfect storm of circumstances left Mr. Fleming most vulnerable to engage in uncharacteristically reckless conduct that could harm someone other than himself, he did just that.  On October 1, 2023, Mr. Fleming received a phone call and text message from a close friend with whom he had developed a co-dependent relationship spanning almost 30 years.  This close friend told Mr. Fleming that she had been involved in helping to obtain ketamine for Matthew Perry and that she was unable to provide Mr. Perry with ketamine he was requesting because she was stuck in a drug treatment program.  She asked Mr. Fleming to help her out by finding the ketamine Mr. Perry wanted and told him that, if he helped her, she would split the $1,000 with Mr. Fleming that Mr. Perry customarily paid her to acquire drugs for him.

In a moment he will regret forever, Mr. Fleming agreed to help his friend.  He reached out to Mr. Perry, who confirmed he was looking to purchase ketamine.  At that point, however, Mr. Fleming faced a significant problem:  While Mr. Fleming had been a heavy drug user at points in his life, he was not a drug dealer, did not have a means to obtain the ketamine Mr. Perry was requesting, and did not have a penny to his name to purchase ketamine to resell to Mr. Perry in any event.  Mr.

**Kendall Brill
& Kelly LLP**
10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604497202

1

DEFENDANT ERIK FLEMING'S SENTENCING MEMORANDUM

Fleming did, however, know a woman who he believed could connect him with a ketamine supplier, so he reached out to her, and she introduced him to Jasveen Sangha, a women Mr. Fleming came to know as the "Ketamine Queen."

When Mr. Fleming connected with Ms. Sangha and told her he was looking for someone to supply ketamine for Mr. Perry, she jumped at the chance, telling him that she sold ketamine to other A-list celebrities and wealthy Angelenos. Mr. Fleming subsequently served as a middleman who delivered ketamine supplied by Ms. Sangha to Mr. Perry's personal assistant—Kenneth Iwamasa—who Mr. Perry had assigned the role of interfacing with Mr. Fleming. And, on three occasions spanning 11 days between October 13, 2023 and October 24, 2023, Mr. Fleming delivered to Mr. Iwamasa (1) a single vial containing ketamine that Mr. Iwamasa requested as a "sample" for Mr. Perry to try; (2) 25 similar vials containing ketamine ordered by Mr. Iwamasa and supplied by Ms. Sangha; and (3) a final package containing 25 vials of ketamine and some ketamine-laced candy supplied by Ms. Sangha. Accordingly, Mr. Fleming's total involvement in trafficking drugs in this case—and over the course of his entire life—consisted of brokering three transactions involving very small quantities of a Schedule III controlled substance to a single customer, all in exchange for a little less than $2,000 that Mr. Iwamasa paid Mr. Fleming as "logistical fees" related to these three transactions.

Tragically, this brief diversion Mr. Fleming took from his otherwise law-abiding life led to a calamity Mr. Fleming never intended and foolishly did not foresee as possible, as it has been determined that the ketamine Ms. Sangha supplied, and that Mr. Iwamasa injected into Mr. Perry, led Mr. Perry's death. Mr. Fleming is appearing at his sentencing fully acknowledging the role he played in this tragedy and is as remorseful as one could be for the harm he has caused those close to Mr. Perry. But while the harm resulting from Mr. Fleming's offense is certain to be in the front of the Court's mind—just like it always is with Mr. Fleming—when it comes to determining the appropriate sentence in Mr. Fleming's

**Kendall Brill & Kelly LLP**
10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604497202

2

DEFENDANT ERIK FLEMING'S SENTENCING MEMORANDUM

case, significant mitigating facts justify tempering the outrage surrounding the unintended impact of Mr. Fleming's wrongdoing with leniency he has earned.

As discussed in detail below, Mr. Fleming—far more than any other defendant whose conduct enabled Mr. Perry's drug use—has gone to extreme lengths to atone for his criminal conduct.  Indeed, the very first time Mr. Fleming was approached by law enforcement in this case, he fully confessed to brokering the sale of ketamine to Mr. Iwamasa for Mr. Perry's use; he identified Ms. Sangha as the source of the ketamine Mr. Iwamasa injected Mr. Perry with on the day he died; he provided law enforcement with Ms. Sangha's phone number and address so the government could immediately identify her; and he shared incriminating text messages involving Ms. Sangha that he had preserved on his cell phone, all steps that led to the immediate apprehension of Ms. Sangha and that supplied the probable cause needed to execute a search warrant at Ms. Sangha's drug stash house, which resulted in the seizure of almost two kilograms of methamphetamine, significant amounts of ketamine, and other evidence, including drug ledgers and scales, which confirmed Ms. Sangha was a prolific drug trafficker.  Indeed, due to Mr. Fleming's prompt, reliable, and complete cooperation with the government—which helped build such an overwhelming case against Ms. Sangha that she was compelled to enter a guilty plea in which she admitted her involvement in at least two deaths— Mr. Fleming has been the most valuable cooperating defendant the government has relied upon in this case to hold others accountable for their wrongdoing.  And, at the same time, the evidence shows Mr. Fleming is the least culpable of the defendants the government has charged with supplying ketamine to Mr. Perry.

Even apart from the extraordinary cooperation Mr. Fleming has provided to the government that should earn him a significant sentencing reduction, Mr. Fleming has undergone a transformative post-offense rehabilitation that rates well beyond the norm.  Over the past two years, Mr. Fleming has worked tirelessly to maintain his sobriety—attending hundreds of AA meetings and laboring toward the

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604497202

3

DEFENDANT ERIK FLEMING'S SENTENCING MEMORANDUM

pinnacle of a rigorous 12-step program to qualify himself as a sponsor who can assist those, like him, who struggle with drug addiction; he has maintained steady employment, which has included, among other things, opening a sober living home, as well as reentering the entertainment business as a producer on a religious television network; and he has sought and received mental health treatment to gain an understanding of why he engaged in the conduct that brings him before this Court and to ensure such behavior is a thing of the past.

In sum, Mr. Fleming is a unique federal defendant in terms of his cooperation, his background, the aberrational nature of the conduct that led to his conviction, and the genuine, sustained efforts he has made to contribute to society in positive ways since the unfortunate role he played in this tragic case.  In light of the valuable, prompt, complete, truthful, and reliable cooperation Mr. Fleming provided to law enforcement; his extraordinary post-rehabilitation efforts; the aberrational nature of his conduct when measured against the significant good he has done in his life; the extreme remorse he has displayed for his conduct, not merely through words, but through actions as well; and the other mitigating factors that make his case unique, Mr. Fleming merits a sentence significantly below his sentencing guideline range and requests that he be sentenced to a "split sentence" of 12 months, consisting of three months imprisonment and nine months in a residential drug treatment facility where he can continue the hard work he has put into maintaining his sobriety.

## II.  **PERTINENT BACKGROUND FACTS RELEVANT TO MR. FLEMING'S SENTENCING**

### A.  **MR. FLEMING'S LIFE PRIOR TO HIS OFFENSE CONDUCT**

As shown through the many letters submitted on behalf of Mr. Fleming with this sentencing memorandum—a group that includes family members, friends, work colleagues, spiritual leaders, and mental health professionals, many of whom have known Mr. Fleming since his childhood—Mr. Fleming is a man whose life has been defined by his genuine desire to help others, even when he has hit some of the

**Kendall Brill & Kelly LLP**

10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604497202

4

DEFENDANT ERIK FLEMING'S SENTENCING MEMORANDUM

lowest points in life.  Indeed, as described below, his kindness and desire to help others are traits that have been observed by others during every phase in his life.[1]

### 1. Despite a Childhood Marked by Abandonment and Hardship, Mr. Fleming Developed Into a Person of Exceptional Character as an Adult

Mr. Fleming was born into complicated circumstances that left lasting marks. His father, Dr. Donald Fleming, recounts that Mr. Fleming experienced a difficult early childhood shaped by maternal abandonment and emotional instability:  Mr. Fleming's mother suffered postpartum depression and surrendered custody of him when he was just two years old, leaving him in the care of his father and stepmother, Helen Fleming.  (Exh. B).  According to Dr. Fleming, Mr. Fleming spent years "constantly seeking love from [his mother] and feeling abandoned when it wasn't returned," cycling between households and struggling emotionally as a result.  (Id.).

Those who knew Mr. Fleming as a child describe someone who, despite these hardships, developed a character of unusual warmth and sensitivity.  Kerri Dunigan, his closest childhood friend since the fourth grade, describes him as "an incredibly generous and loving soul" who was "consistently kind, sensitive, and deeply loyal." (Exh.  S).  Lisa M. Kenny Cates, a close friend since high school, recalls that when a fellow student committed suicide at USC, "Erik was visibly upset by the news"—a reaction she took as evidence he was "more sensitive than his peers."  (Exh.  Z).

Dr. Jack Schnel, a licensed psychologist who has known Mr. Fleming since he was four years old, observed his development through a clinical lens.  He describes Mr. Fleming's early life as marked by "early child abuse" that nonetheless

---

[1] A selection of letters from Mr. Fleming's many supporters are filed under separate cover and identified as Exhibit B to Exhibit BB.  Exhibit A is a letter from Mr. Fleming to the Court addressing his background, his involvement in the offense conduct, his efforts to atone for his wrongdoing, and his profound remorse for the role he played in this tragic case.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604497202

5

DEFENDANT ERIK FLEMING'S SENTENCING MEMORANDUM

failed to extinguish his fundamental goodness:  "the abuse did not destroy his kindness and goodness; he wanted to do the right thing and he did."  (Exh.  AA).

And Mr. Fleming's father describes how, despite his troubled adolescence, Mr. Fleming turned a corner at sixteen—returning to live with him, working in his dental office, and setting his sights on attending USC's prestigious film production program.  Mr. Fleming was ultimately accepted into that program, and his graduation film—which his father describes as accomplishing what industry professionals said was technically impossible—launched a career in television and film for Mr. Fleming that would span decades.  (Exhs. B; *see also* Exh. A, N).

**2.      Mr. Fleming's Career Was Defined by Creative Achievement and Genuine Generosity Toward Others**

The entertainment business is notoriously one of the most competitive and demanding industries one can enter, but despite that reality, Mr. Fleming's drive and creativity helped him find success in producing television shows and movies after graduating from USC.  In 1992, he created an experimental short film featuring a Marvel Comics character through CGI that garnered significant attention and praise by those in the industry.  His film projects that followed included a children's movie called "My Brother the Pig," in which Mr. Fleming directed Scarlett Johansson in her first leading film role, as well as a documentary film he co-produced in 2013 with Natalie Portman named "The Seventh Fire," about drug addiction on Native American Reservations, which was screened at the White House.  In addition, Mr. Fleming found success during his career directing and producing television shows, including "America's Funniest Home Videos" and "The Surreal Life."

As meaningful as Mr. Fleming's own success was to him in the entertainment industry, he found even more satisfaction in helping others trying to gain a foothold in the film and television business, as multiple letter writers attest to in describing the generosity defining that phase of Mr. Fleming's career.  Nicholas Hollander, a television writer who met Mr. Fleming in the late 1990s, describes him as someone

Kendall Brill
& Kelly LLP

10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604497202

6

DEFENDANT ERIK FLEMING'S SENTENCING MEMORANDUM

who not only demonstrated "creativity, technical skill, and cinematic vision" but who then went "one step further" by introducing Mr. Hollander to an A-list producer and helping develop a concept that ultimately sold to a network. (Exh. B). Mr. Hollander writes simply: "Kindness is a choice. Erik made that choice." (Id.).

Those who experienced Mr. Fleming's kindness and trustworthiness are not limited to those operating in the entertainment space. One example is Dr. Mary Gallagher, a retired President of Los Angeles City College, who has known Mr. Fleming for 29 years. Their relationship began when, after a minor traffic accident involving her late partner, Mr. Fleming—rather than filing an insurance claim— asked if he could pay for the damage he caused over time and honored every payment on schedule. (Exh. R). That initial interaction, she writes, "revealed Erik's character: he kept his word, maintained regular communication, and took personal responsibility for his actions." (Id.). Over three decades, she witnessed him dedicate himself to "helping others overcome struggles with addiction, career challenges, and hopelessness," noting he "consistently devoted time and energy to ensuring others maintain hope and find their path forward." (Id.).

### 3. Mr. Fleming's Unwavering Commitment to Family, Faith, and Community

In the letters submitted for this Court's review from those who know Mr. Fleming best, a common theme emerges of Mr. Fleming's extraordinary dedication to the care of family members in their final years. When his stepmother Helen was diagnosed with terminal brain cancer in 2021, Mr. Fleming moved from Los Angeles to San Diego to help his father care for her. Dr. Fleming writes that "during her last 4 months . . . he went every day to see her, bringing her food and entertaining her." (Exh. B). Multiple writers independently confirm this. For instance, Paula Klein, a 78-year-old family friend who considered Helen her "dearest friend," describes Mr. Fleming as being "by her bedside taking care of her almost around the clock, showing his tenderness and love." (Exh. Q). Leslie Miller,

Kendall Brill
& Kelly LLP

10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604497202

7

DEFENDANT ERIK FLEMING'S SENTENCING MEMORANDUM

Mr. Fleming's uncle, recalls: "When I saw how he came day after day to ease her pain, I understood what I always suspected: Erik is a gentle person eager to help wherever possible." (Exh. D).[2]

Mr. Fleming's investment in his spiritual life is another consistent theme across letters from friends, religious leaders, and his therapist. Rabbi Barney Kasdan of Kehilat Ariel Messianic Synagogue, who has served as Mr. Fleming's rabbi and spiritual leader for the past five years, describes him as "a giving, generous and conscientious part of our community" and describes how he donated his significant collection of archaeological artifacts from the ancient Middle East to the synagogue "so others could learn more about their faith." (Exh. L). He adds Mr. Fleming "is most welcome to continue to be a member of our synagogue community." (Id.).

Darryl Stubblefield similarly describes how Mr. Fleming graciously shared his collection of religious artifacts with "our church and schools, providing demonstrations that opened our eyes to the significance of these items." (Exh. J). Mr. Fleming's therapist, Dr. Joseph Bankman, observes that, since beginning therapy, Mr. Fleming "has sought spiritual guidance from his rabbis and from a Christian minister he finds inspiring" and is now pursuing a related interest by "printing 3-D replicas of religious objects to donate"—conduct Dr. Bankman describes as entirely consistent with their therapeutic work. (Exh. G).

---

[2] Mike Auer, Mr. Fleming's stepfather, corroborates this pattern across multiple family members, noting "He was very present and helpful" when his biological mother passed away, and adding that Mr. Fleming "was also a caregiver for his stepmother when she passed." (Exh. E). Ronny Schnel, who has known Mr. Fleming since he was four years old, adds Mr. Fleming's "exemplary care for his stepmother demonstrated qualities of responsibility, compassion, and resilience"— qualities she is confident "can guide him as he rebuilds his life." (Exh. AA).

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604497202

8

DEFENDANT ERIK FLEMING'S SENTENCING MEMORANDUM

### 4. Mr. Fleming Has Devoted Himself to Helping Others Avoid His Similar Struggles with Drug Addiction

Unfortunately, Mr. Fleming's work in the entertainment industry introduced him to ready access to drugs and kicked off a nearly 20-year-period when he relapsed on a number of occasions into heavy drug use, including periods of addiction to crack cocaine. Reflecting his generous nature and penchant for helping others, Mr. Fleming has channeled his own efforts to overcome the grip that drugs have had over his life into helping others by serving as a certified drug counselor at a number of drug rehabilitation facilities over the past decade. As a drug addict himself, Mr. Fleming has always been able to relate to the struggles of the people he counsels in a unique way, and he estimates that, throughout the course of his work as a drug counselor, he has helped over 1,000 people address their drug addiction issues.

The character letters offered for this Court's review speak of Mr. Fleming's lengthy career working with individuals struggling with addiction—work that predates his legal troubles by years and that, letter writers make clear, was a genuine vocation rather than merely a profession:

Stacey Max Nijst, a certified addiction counselor who served as Mr. Fleming's clinical supervisor at Wavelengths Recovery, describes him as "an exceptionally dedicated substance abuse counselor whose commitment to his clients is evident in every aspect of his work," adding that he "consistently demonstrated compassion, kindness, and a genuine passion for helping those in need." (Exh. K).

Mr. Stubblefield, a certified Substance Abuse Counselor who worked alongside Mr. Fleming at Wavelengths Recovery for over eight years, describes how Mr. Fleming would facilitate drug treatment groups where he "shared his knowledge and love of film, which inspired many of our clients." (Exh. J). His wife, Denuene Munns-Stubblefield, also a certified counselor with 15 years of experience, observes that Mr. Fleming's willingness to accept responsibility in this case "is an important

**Kendall Brill & Kelly LLP**
10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604497202

9

DEFENDANT ERIK FLEMING'S SENTENCING MEMORANDUM

indicator of a person's willingness to do the internal work necessary to learn from their mistakes." (Exh. I).

Finally, Ange Billman-Maihorn, Mr. Fleming's close friend of over three decades, captures this dimension of Mr. Fleming's character with particular force. She describes watching Mr. Fleming battle his own addiction while simultaneously pulling others back from the brink: "every time Erik fought his way to the surface, he would immediately try to help someone else who was struggling." (Exh. Y). As Ms. Billman-Maihorn recalls, she introduced Mr. Fleming to a friend working in addiction recovery; that friend "hired Erik on the spot as a rehab counselor, and Erik went on to help save countless lives on their sobriety journeys." (Id.).

**B.  MR. FLEMING'S OFFENSE CONDUCT AND POST-OFFENSE CONDUCT, INCLUDING HIS EXTRAORDINARY EFFORTS TO COOPERATE WITH THE GOVERNMENT AND ENGAGE IN TRANSFORMATIVE POST-OFFENSE REHABILITATION**

**1.  Mr. Fleming's Offense Conduct**

As noted above, Mr. Fleming overcame some of the challenges he faced very early in his life to experience success in the entertainment industry and took on a career as a drug counselor to help a multitude of others wage the same fight against drug addiction he has fought during much of his adult life. In the summer of 2023, Mr. Fleming simultaneously left his job to spend four months caring for his stepmother, who was in the final stages of succumbing to brain cancer and dementia and who passed away with Mr. Fleming at her side on September 24, 2023; relapsed into heavy drug use; and fell into a deep state of depression. By the start of October 2023, having just lost his stepmother, Mr. Fleming was flat broke and living with his younger sister, without a plan to pull himself out of the misery he was enduring.

On October 1, 2023, a close personal friend with whom Mr. Fleming had a co-dependent personal relationship spanning 30 years ("Individual #1"), texted Mr. Fleming, telling him "Call me ASAP, and I'll give you $500 if you can figure out

Kendall Brill
& Kelly LLP

10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604497202                                    10

DEFENDANT ERIK FLEMING'S SENTENCING MEMORANDUM

this issue with me." (Exhibit DD). Mr. Fleming called Individual #1 and learned that she had been procuring ketamine for Matthew Perry, that Mr. Perry was paying her $1,000 each time she managed to obtain the ketamine he wanted, and that the "issue" Individual #1 faced is that she could not currently obtain ketamine that Mr. Perry wanted because she was dealing with her own drug relapse and was confined to a residential drug treatment program. Individual #1 told Mr. Fleming that she would split the $1,000 Mr. Perry customarily paid her in return for obtaining the ketamine he wanted if Mr. Fleming could connect with Mr. Perry and figure out how to get the ketamine he had asked Individual #1 to procure for him.

Mr. Fleming agreed to help his friend. He called Mr. Perry, told him he was Individual #1's friend, and advised him that he could obtain ketamine for him—while simultaneously telling Mr. Perry "I never do this" (referring to dealing drugs). While Mr. Fleming did not know anyone who could supply even the small volume of ketamine Mr. Perry was looking to obtain, he did know a person—Individual #2—who he believed did. After he confirmed Mr. Perry's interest in obtaining ketamine, Mr. Fleming contacted Individual #2 to see if she could connect him with a supplier who could supply ketamine for Mr. Perry.

Individual #2 connected Mr. Fleming with an individual named "Jas" (subsequently identified as Ms. Sangha), and, at the request of Mr. Perry's personal assistant, Mr. Iwamasa—who at that point had been assigned by Mr. Perry to interface with Mr. Fleming to obtain the ketamine Mr. Perry wanted—Mr. Fleming traveled to Ms. Sangha's apartment and purchased one vial of ketamine, which Mr. Fleming delivered to Mr. Iwamasa on October 13, 2023.

Later that same date, Mr. Iwamasa reached out to Mr. Fleming and asked him for 25 vials of ketamine in exchange for $6,000, which included $500 to compensate Mr. Fleming for his "logistics." Since Mr. Fleming did not have any money to pay for the ketamine Ms. Sangha was supplying, and since Mr. Fleming and Ms. Sangha did not have a prior relationship that would have convinced her to "front" ketamine

Kendall Brill & Kelly LLP
10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604497202

11

DEFENDANT ERIK FLEMING'S SENTENCING MEMORANDUM

to Mr. Fleming without pre-payment, Mr. Fleming drove to Mr. Perry's residence on October 14, 2023, picked up the money from Mr. Iwamasa needed to purchase ketamine from Ms. Sangha, drove to Ms. Sangha's apartment to purchase the promised 25 vials of ketamine from her, and delivered the ketamine supplied by Ms. Sangha to Mr. Iwamasa that evening.

On October 23, 2023, Mr. Iwamasa initiated contact with Mr. Fleming again and asked to purchase "the same as last time again [25 vials of ketamine]." Later that evening, Mr. Fleming traveled to Mr. Perry's residence and picked up $6,000 in cash once again from Mr. Iwamasa; and, the next day, Mr. Fleming picked up another 25 vials of ketamine from Ms. Sangha and delivered them to Mr. Iwamasa.

On October 24, 2023, Mr. Perry was found dead in a hot tub at his home after Mr. Iwamasa had injected him with multiple ketamine shots that day. When Mr. Fleming learned of Mr. Perry's death, he was shocked, as he did not believe ketamine use could result in a deadly overdose.[3] That shock quickly gave way to profound remorse, as Mr. Fleming understood how recklessly he had acted in putting Mr. Perry in harm's way and how his agreement to do a favor for Individual #1 had spiraled into a situation where he was partially responsible for someone's death.

_____

[3] Mr. Fleming's lack of awareness that ketamine use poses a risk of death in retrospect may appear naïve and foolish, but a study conducted by the Center of Disease Control a year after Mr. Perry's death confirmed it is extremely rare for a deadly overdose to occur when the sole drug contributing to the overdose is ketamine. *See* Exhibit EE ("*Notes from the Field:* Ketamine Detection and Involvement in Drug Overdose Deaths—United States, July 2019-June 2023, CDC, dated November 7, 2024 (finding that, in a four year period studied spanning July 2019 and June 2023, ketamine was detected in less than 1% of overdose deaths and was the only drug involved in only 24 overdose deaths—less than 0.01% of overdose deaths—during that time period). That said, Mr. Fleming fully understands that the abuse of any controlled substance, particularly one like ketamine, which is designed to only be administered under a doctor's care, could prove deadly, and he takes full responsibility for his inexcusable failure not to appreciate that risk.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604497202

12

DEFENDANT ERIK FLEMING'S SENTENCING MEMORANDUM

Others handled this situation differently, including Mr. Iwamasa, who told Mr. Fleming to delete their messages and that he cleaned up the scene to remove ketamine bottles and syringes before reporting Mr. Perry's death to the authorities, and Ms. Sangha, who phoned and texted Mr. Fleming to instruct him to delete all of their text messages and erase all record of their involvement in supplying ketamine to Mr. Perry.  In response to those instructions from Mr. Iwamasa and Ms. Sangha, Mr. Fleming did the exact opposite of what they forcefully told him to do.  Instead of deleting the text messages between himself, Mr. Perry, Ms. Sangha, Mr. Iwamasa, Individual # 1, and Individual # 2 that implicated them in supplying ketamine to Mr. Perry, as well as the various roles they played in doing so, Mr. Fleming preserved these messages as best he could, by taking screenshots of them, encrypting them, and storing them on a computer he had.

**2.      Mr. Fleming's Immediate and Fulsome Efforts to Cooperate With the Government Before Being Charged in This Case**

(a)      Mr. Fleming Begins Cooperating With the Government the Very First Time He Has Contact With Law Enforcement in This Case

When law enforcement executed a search warrant at Mr. Iwamasa's residence in January 2024, Mr. Iwamasa admitted he regularly injected Mr. Perry with ketamine leading up to his death and that he obtained ketamine for Mr. Perry from two sources, Dr. Salvador Plasencia and Mr. Fleming.  He also told law enforcement that Individual #1 had introduced Dr. Plascencia and Mr. Fleming to Mr. Perry because Individual #1 knew that Mr. Perry was interested in purchasing ketamine. Mr. Iwamasa also stated that he paid Dr. Plasencia $24,000 for the ketamine he supplied for Mr. Perry's use and that he provided Mr. Fleming $5,000 for each of the two packages containing 25 vials of ketamine Mr. Fleming delivered to him.

Based on the information provided by Mr. Iwamasa and phone records that corroborated a connection between Mr. Fleming and Individual #1, the government

**Kendall Brill & Kelly LLP**
10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604497202

13

DEFENDANT ERIK FLEMING'S SENTENCING MEMORANDUM

obtained a warrant to search the residence at Mr. Fleming's sister, where Mr. Fleming had been staying since his stepmother had died in late September 2023. Since Mr. Fleming served as a "middleman" procuring the ketamine Ms. Sangha supplied to Mr. Iwamasa, it appears Mr. Iwamasa was under the impression Mr. Fleming was a drug trafficker who was the source of the ketamine he procured for Mr. Perry, and he gave that impression to law enforcement as well. Thus, the warrant to search the residence of Mr. Fleming's sister—which the government executed on March 5, 2024—sought to seize, among other items, controlled substances evidencing an involvement in drug trafficking; "items and paraphernalia for the manufacturing, distributing, packaging, sale, or weighing or controlled substances, including scales, and other weighing devices, plastic baggies, food saver sealing devices, heat sealing devices, balloons, packages materials, containers, and money counters; "items used in the packaging of currency for consolidation and transportation"; and documents reflecting communications with, among others "sources of supply of controlled substances or drug customers," among other items.

Since Mr. Fleming's involvement in procuring drugs for any third party began and ended with the role he played in delivering drugs supplied by Ms. Sangha to Mr. Iwamasa between October 13-24, 2023, when law enforcement executed this search warrant, they found none of these items, or any other indication Mr. Fleming was actively involved in the drug trade. What they did find, however, in the person of Mr. Fleming, was someone who was willing to cooperate with law enforcement immediately and provide insights into this case no other person has before or since.

Without the benefit of counsel, or any concept of the personal consequences he faced for implicating himself and others in the events surrounding Mr. Perry's death—apart from an understanding that talking immediately might spare his arrest that day—Mr. Fleming provided law enforcement with fulsome cooperation during this first contact he had with law enforcement in this case. Specifically, on the date his sister's residence was searched, Mr. Fleming:

**Kendall Brill
& Kelly LLP**

10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604497202    14

DEFENDANT ERIK FLEMING'S SENTENCING MEMORANDUM

\*      Admitted that he procured ketamine for Mr. Perry on three occasions over the course of approximately two weeks and delivered it to Mr. Iwamasa;

\*      Informed the agents that Individual #1, who he identified by her true name, knew that he was broke, told him that he could make money delivering packages of ketamine to Mr. Perry, and told him that she could not do so herself at the time, as she had in the past, because she was in a drug treatment facility;

\*      Told the agents that Individual #1 had informed him that Mr. Perry was obtaining ketamine from multiple sources, including medical doctors;

\*      Identified Individual #2 by her true name to the agents, and told them she was the person who introduced him to "Jas," the source of the ketamine he delivered to Mr. Iwamasa;

\*      Provided the agents with detailed information that allowed them to identify "Jas"—the source of the ketamine that resulted in Mr. Perry's death—as Jasveen Sangha, including Ms. Sangha's phone number and the address for the apartment where she lived in North Hollywood;

\*      Identified a photograph of the apartment where Ms. Sangha lived and where he visited to pick up the ketamine she supplied;

\*      Stated that he communicated with Ms. Sangha via the Signal text messaging application Individual #2 told him to install on his phone to communicate with Ms. Sangha;

\*      Informed the agents that both Ms. Sangha and Mr. Iwamasa instructed him to "delete everything" from his digital devices after Mr. Perry died; and

\*      Showed agents a message on his phone that he had preserved, dated October 10, 2023, reading, "Hi, Jas.  It's Erik [Fleming].  [Individual #2's] friend. What is your addy?  How many vials do you have available?"

**Kendall Brill
& Kelly LLP**

10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604497202

15

DEFENDANT ERIK FLEMING'S SENTENCING MEMORANDUM

(b)    The Government Utilizes the Cooperation Provided by Mr. Fleming During Its First Encounter with Him to Obtain a Search Warrant for Ms. Sangha's Residence That Results in the Seizure of Evidence Confirming She Was a Prolific Drug Trafficker

The government put the cooperation that Mr. Fleming provided when he was interviewed on March 5, 2024 to immediate and valuable use.  Two days after Mr. Fleming was interviewed at his sister's house, the government obtained a federal search warrant for Ms. Sangha's residence based entirely on probable cause supplied by Mr. Fleming.  This search secured as a result of Mr. Fleming's cooperation confirmed that Ms. Sangha was a prolific poly-substance drug trafficker, as the evidence seized at the stash house where Ms. Sangha stored, manufactured, and sold drugs resulted in the seizure of:  (1) almost two kilograms methamphetamine in the form of 3,792 visually identical pressed pills; (2) sizeable amounts of ketamine; and (3) other indicia that Ms. Sangha was a significant drug trafficker, including drug ledgers, evidence of communications memorializing drug transactions, and a drug scale.  Ms. Sangha was taken into custody immediately upon the discovery she was operating this drug stash house, and she has remained in custody since that date.

(c)    Mr. Fleming Supplies Truthful, Complete, and Reliable Evidence Concerning the Roles Played by Mr. Sangha, Mr. Iwamasa, Individual #1, and Individual #2 in Procuring Ketamine for Mr. Perry

On April 3, 2024, prior to any discussions indicating how his cooperation with the government might benefit him, Mr. Fleming participated in an extensive proffer interview with the government and provided a fully corroborated avalanche of proof that has allowed the government to hold those it has chosen to prosecute accountable for supplying Mr. Perry with ketamine, including Mr. Fleming himself.  Notably, Mr. Fleming appeared at this proffer interview with six folders

Kendall Brill & Kelly LLP
10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604497202

16

DEFENDANT ERIK FLEMING'S SENTENCING MEMORANDUM

containing printouts of screenshots of text messages sent between Mr. Fleming, Ms. Sangha, Mr. Iwamasa, Mr. Perry, Individual #1, and Individual #2, which he provided to the government. These text messages were the very messages Ms. Sangha and Mr. Iwamasa had instructed Mr. Fleming to delete; and by preserving them and providing them to law enforcement, Mr. Fleming provided the government with unimpeachable proof that documented the involvement of these individuals in the crimes the government was investigating.

During this fulsome debriefing and thereafter, Mr. Fleming provided proof concerning Individual #1's role in procuring ketamine for Mr. Perry from multiple sources and in luring Mr. Fleming into stepping into her shoes to assume that role when she could not due to being placed in a residential drug treatment program. He detailed Individual #2's role in connecting him with Ms. Sangha and her involvement in the key early moments when he began procuring ketamine for Mr. Perry. Mr. Fleming provided a detailed account of his communications with Mr. Iwamasa in which Mr. Iwamasa arranged for Mr. Fleming to deliver ketamine to him; explained how the three exchanges of money and ketamine between him and Mr. Iwamasa took place; and described efforts that Mr. Iwamasa made to destroy evidence that might be discovered by the police in the aftermath of Mr. Perry's death, including his efforts to convince Mr. Fleming to delete the incriminating communications between them that Mr. Fleming instead provided to the government. And finally, Mr. Fleming provided a full account of the role played by Ms. Sangha—who Mr. Fleming described to the government as "the Ketamine Queen"—in supplying the ketamine delivered to Mr. Iwamasa and Ms. Sangha's own efforts to delete communications implicating her in supplying ketamine to Mr. Perry and to convince Mr. Fleming to do the same.

**Kendall Brill & Kelly LLP**
10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604497202

17

DEFENDANT ERIK FLEMING'S SENTENCING MEMORANDUM

### 3. Mr. Fleming Promptly Accepts Responsibility for His Role In Procuring Ketamine for Mr. Perry that Resulted in His Death and Signs a Cooperation Plea Agreement with the Government

After Mr. Fleming supplied the government with an exhaustive account of everything he knew about the individuals involved in procuring ketamine for Mr. Perry, the government presented Mr. Fleming and his counsel with a cooperation plea agreement on June 28, 2024. He executed that agreement a mere five days later and formerly entered his guilty plea to two charges—conspiring to distribute ketamine, in violation of 21 U.S.C. § 846, and distributing ketamine resulting in death and serious bodily injury, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(E)(i)—before your Honor on August 7, 2024.

The plea agreement contemplates Mr. Fleming's complete cooperation with the government as directed by the government, and, at all points in time, Mr. Fleming has been prepared to offer whatever cooperation the government required of him, including testifying against those who, unlike himself, did not promptly accept responsibility for their role in this offense.[4] Indeed, on several occasions, the government scheduled witness preparation sessions with Mr. Fleming during the more than two years Ms. Sangha's case was pending trial. However, his testimony was never needed in that case because the overwhelming evidence that Mr. Fleming

---

[4] The plea agreement, conversely, obligates the government to "to bring to the Court's attention the nature and extent" of Mr. Fleming's cooperation and that, if the government determines that Mr. Fleming has complied with his obligations under the plea agreement and provided to substantial assistance to law enforcement in the prosecution or investigation of another, "to move the Court pursuant to U.S.S.G. § 5K1.1 to fix an offense level and corresponding guideline range below that otherwise dictated by the sentencing guidelines, and to recommend a term of imprisonment within this reduced range." *See* Plea Agreement at ¶¶ 6(c) and (d). The government has informed Mr. Fleming's counsel that it intends to make a motion to reduce Mr. Fleming's sentence pursuant to U.S.S.G. § 5K1.1.

Kendall Brill & Kelly LLP
10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604497202

18

DEFENDANT ERIK FLEMING'S SENTENCING MEMORANDUM

provided to the government proving Ms. Sangha's involvement in the crimes with which she was charged seemingly left her with no option but to plead guilty.

The plea agreement also addressed Mr. Fleming's anticipated Sentencing Guideline range, prior to any downward departure to account for his substantial cooperation in this case or adjustments to his final sentence upon considering the factors set forth at 18 U.S.C. § 3553(a).  Specifically, the government has stipulated that the base offense level governing Mr. Fleming's offense is 26, pursuant to U.S.S.G. § 2D1.1(A)(4).  The plea agreement further provides that the parties are free under the agreement to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines may be appropriate.

### 4. Mr. Fleming's Genuine Remorse for Having Engaged in the Serious Crimes for Which He Is being Sentenced

The letters submitted for this Court's review are unanimous on the question of Mr. Fleming's remorse for the harm he has done and for having violated the law, with many writers taking pains to distinguish Mr. Fleming's genuine contrition from someone faking remorse.  Ange Billman-Maihorn, who describes herself as "a lifelong, trained actor" who "knows the difference," writes: "His anguish is not performative.  What he carries is real, and it is a punishment that will follow him every day for the rest of his life — far longer than any formal sentence."  (Exh. Y).

R. Douglas Spiro, who worked alongside Mr. Fleming for months, echoes this sentiment:  "His remorse was not performative — it was an ongoing, consistent expression of someone reckoning with the harm caused by his choices and determined to live differently moving forward."  (Exh. M).  He notes that Mr. Fleming "never minimized his role, never deflected responsibility, and never spoke of the situation without emotion, humility, and sincere regret."  (Id.).

Matt Harrington, Mr. Fleming's half-brother, provides perhaps the most intimate account of Mr. Fleming's internal reckoning.  He writes that Mr. Fleming "has been devastated by the fact that he contributed, in any way, to the chain of

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604497202                                    19
DEFENDANT ERIK FLEMING'S SENTENCING MEMORANDUM

events" leading to Mr. Perry's death, and that his remorse has "profoundly changed" him. (Exh. F). Mr. Harrington, who has known Mr. Fleming for over forty years, states that "this is the only time I have ever seen him act in a way that so sharply contradicts his morals, his generosity, and his devotion to helping others." (Id.).[5]

**5.    Mr. Fleming Has Engaged a Transformative Post-Offense Rehabilitation Over the Two Years He Has Been on Pre-Trial Release Awaiting Sentencing**

Mr. Fleming has maintained steady employment during almost all of the time he has been on pre-trial release and has excelled in the work he has performed.

Most recently, in March 2026, Mr. Fleming began working as the "Consulting Producer" for a television network, Jewish Life TV Network, which provides programming tailored for religious audiences. For Mr. Fleming, this work has been especially significant, given that it allows him to combine his passion for religious based themes with his background in entertainment. (Exh. P).

Prior to that, Mr. Fleming worked for several months to establish Quest Sober Living, a 14-bed residence dedicated to providing a stable, supportive environment for individuals seeking long-term sobriety. The Director of Administration of that facility, Mr. Spiro, has provided a letter in support of Mr. Fleming explaining: "Erik played an essential role in every aspect of developing the home—from operational design and resident-support systems to daily structure and recovery-focused programming. His work ethic was exceptional, and his commitment to creating a safe, accountable, and compassionate environment was evident in everything he

---

[5] As detailed in his letter to the Court, one of the ways Mr. Fleming has attempted to show remorse and atone for his wrongdoing is by engaging in charitable acts, as he has in the past, including by volunteering with Urban Sanctuary, an animal welfare organization, to deliver supplies to rescue homes during the Palisades fire; Prison Professionals, a program that helps ex-convicts reenter society; and O-END Community Health Program, an organization that distributes Narcan to drug treatment centers. *See* Exhibit A at p. 4.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604497202

20

DEFENDANT ERIK FLEMING'S SENTENCING MEMORANDUM

did." (Exh. M).  This work is deeply personal to Mr. Fleming, as it is reflective of his own journey in accomplishing and maintaining sobriety.  This was recognized by Mr. Spiro, who wrote:  "In the time he has worked with us, Erik has demonstrated honesty, accountability, empathy, and a strong commitment to helping people avoid the very struggles he has witnessed and lived through." (Id.).

In addition to those two jobs, Mr. Fleming has worked diligently to fill gaps in his employment with at least three other jobs, including positions with Ancient Resources, Dr. Mark Honzel, and David Pomier, a fellow film producer.

On top of throwing himself into the work described above, Mr. Fleming has spent a significant amount of time focused on his sobriety and mental health.  For instance, he has attended AA meetings several times each week for almost two years, amounting to hundreds of hours Mr. Fleming had dedicated to achieving and maintaining his sobriety during this difficult and uncertain time of his life.[6]

Recognizing the devastating effects drugs have had on him, Mr. Fleming has also worked to encourage others to achieve sobriety.  He has completed a 12-step program, and his commitment to that process has been consistent and serious.  With completing the final step, he is now eligible to serve as a sponsor, guiding others through the same journey he has navigated.  That Mr. Fleming is oriented toward that goal reflects something meaningful:  he is not merely focused on his own recovery but on using his experience to help others.

In addition, during the nearly two years Mr. Fleming has been on pre-trial release, he has had the insight to recognize his need for mental health treatment.  In this vein, for the past year, Mr. Fleming has been under the regular care of therapist Joe Bankman, who has helped Mr. Fleming emotionally and in understanding the root causes that led to his addiction and offense conduct.  (Exh. G).  Dr. Bankman describes that "Mr. Fleming has worked as hard as any client I have ever had.  He

_____

[6] *See* Exhibit CC (logs evidencing Mr. Fleming's attendance at these AA meetings).

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604497202

21

DEFENDANT ERIK FLEMING'S SENTENCING MEMORANDUM

comes to every session; he engages with me intensely; he thinks about our work together in between sessions and does cognitive-behavioral homework between sessions. Most importantly, he has incorporated our work into his real-world behavior." (*Id.*)

## III.   THE PRESENTENCE REPORT

The Presentence Report ("PSR") is dated September 26, 2024. *See* Dkt. No. 26. As a result, it does not capture the bulk of Mr. Fleming's post-offense rehabilitation, which is described herein. With that exception, Mr. Fleming agrees the PSR is accurate and does not object to its contents. The PSR calculates Mr. Fleming's total adjusted offense level under the United States Sentencing Guidelines at Offense Level 23 and places him at Criminal History Category I, yielding an advisory sentencing guideline range of 46-57 months prior to the significant downward departure that Mr. Fleming has earned as a result of the substantial assistance he has provided to the government. Mr. Fleming does not disagree with this calculation, but, as indicated below, asserts that the final sentence he receives should be well below this sentencing guideline range once the Court takes into account Mr. Fleming's cooperation and the mitigating factors that merit a below-guideline sentence this Court must consider pursuant to 18 U.S.C. § 3553(a).

## IV.   MR. FLEMING IS ENTITLED TO A SUBSTANTIAL DEPARTURE OF NO FEWER THAN EIGHT TO TEN LEVELS UNDER 18 U.S.S.G. § 5K1.1 TO ACCOUNT FOR THE EXTRAORDINARY NATURE OF HIS COOPERATION

### A.   The Extraordinary Nature of Mr. Fleming's Cooperation

Over the past 26 months, Mr. Fleming provided extensive, immediate, reliable, and valuable cooperation focused on four individuals: Ms. Sangha, Mr. Iwamasa, Individual #1, and Individual #2. That cooperation has resulted in two significant convictions to date in this very high profile case and sufficient evidence to prosecute Individual #1 and Individual #2 for their roles in supplying ketamine to

**Kendall Brill
& Kelly LLP**

10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604497202

22

DEFENDANT ERIK FLEMING'S SENTENCING MEMORANDUM

Mr. Perry had the government opted to do so.  Notably, Mr. Fleming's cooperation included, in significant respects, cooperation against individuals substantially more culpable than himself and was absolutely needed to identify and successfully prosecute the most culpable individual involved in this case—Ms. Sangha, the "Ketamine Queen," a large-scale, poly-drug trafficker who supplied the ketamine that resulted in Mr. Perry's death in the aftermath of supplying ketamine that killed another person, and who continued operating her drug emporium out of her stash house in North Hollywood even after learning these two deaths were linked to her drug sales.  The nature of the cooperation that Mr. Fleming provided to the government against these individuals is described below.

### 1.     Mr. Fleming's Cooperation Against Jasveen Sangha

Mr. Fleming's cooperation with respect to Ms. Sangha warrants particular attention.  Mr. Fleming was the individual who first identified Ms. Sangha to the government, making him the critical link that brought the most culpable defendant in this investigation into focus.[7]

As part of the cooperation he provided to the government, Mr. Fleming described, in detail, the process by which he obtained ketamine from Ms. Sangha; provided corroborating documentary evidence to the government supporting his potential testimony against Ms. Sangha in the form of highly-incriminating communications featuring Ms. Sangha and others (including Mr. Perry, Mr. Iwamasa, Individual #1, and Individual #2), which Ms. Sangha had deleted and had instructed Mr. Fleming to delete; and provided the entirety of the government's

---

[7]   Indeed, as indicated above, at the time law enforcement executed its search warrant at Mr. Fleming's residence in March 2024, the government suspected Mr. Fleming was the ultimate source of supply furnishing ketamine to Mr. Iwamasa, and the government had no awareness of Ms. Sangha or her role in Mr. Perry's death until Mr. Fleming identified her to law enforcement that day and told law enforcement where she lived and dealt drugs.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604497202                                    23

DEFENDANT ERIK FLEMING'S SENTENCING MEMORANDUM

probable cause for seeking the federal search warrant executed at Ms. Sangha's drug stash house in North Hollywood, which resulted in the seizure of mandatory-minimum quantities of methamphetamine that dictated the high sentencing guideline range Ms. Sangha ultimately faced when sentenced, ledgers and communications evidencing Ms. Sangha's significant involvement in the drug trade, and other indicia Ms. Sangha was a prolific drug trafficker. Mr. Fleming's cooperation, including his anticipated testimony against Mr. Sangha, was certainly the key factor that contributed to Ms. Sangha's decision to enter the guilty plea that resulted in the 15-year sentence she ultimately received.

Ms. Sangha is, by any measure, the most culpable defendant identified in the government's investigation, a fact reflected by her 15-year sentence. Indeed, the difference between Ms. Sangha's culpability in this case and Mr. Fleming's culpability is the difference between the distance to the corner and the distance to the moon. Ms. Sangha was a large-scale, poly-drug supplier who dealt in significant quantities of controlled substances, including in quantities triggering a mandatory minimum sentence in her case; her drug trafficking resulted in at least two deaths, including Mr. Perry's death, resulting from ketamine abuse; there is no sign at all that Ms. Sangha was in the process of doing anything other than accelerating her dangerous drug trafficking activities at the time she was apprehended; and there is evidence that, even sitting behind bars, Ms. Sangha was plotting to capitalize on her notoriety in this case and exploit for financial gain her role as the "Ketamine Queen" in causing Mr. Perry's death. Mr. Fleming was the first person to bring Ms. Sangha's involvement in this case to the government's attention and was best positioned to testify directly about her role in the chain of events leading to Mr. Perry's death. This cooperation provided by Mr. Fleming—which was early, specific, corroborated, and extremely consequential—is precisely the kind of substantial assistance the § 5K1.1 framework is designed to reward generously and should be rewarded generously to incentivize those involved in criminal activity to

Kendall Brill
& Kelly LLP

10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604497202

24

DEFENDANT ERIK FLEMING'S SENTENCING MEMORANDUM

immediately come forward and provide truthful, reliable, and provable information about others involved in criminal activity more culpable than themselves.

### 2. Mr. Fleming's Cooperation Against Kenneth Iwamasa

Mr. Fleming also provided substantial assistance by detailing Mr. Iwamasa's role in the events leading to Mr. Perry's death. Specifically, Mr. Fleming described the role that Mr. Iwamasa played in ordering ketamine on Mr. Perry's behalf and coordinating the deliveries of ketamine that Mr. Fleming obtained from Ms. Sangha, as well as Mr. Iwamasa's role in injecting Mr. Perry with ketamine. He also informed law enforcement that Mr. Iwamasa told him about his efforts to dispose of evidence of Mr. Perry's ketamine use following his death and instructed him to erase their text messages. This information provided by Mr. Fleming concerning Mr. Iwamasa's criminal conduct was corroborated by the text messages he, in fact, preserved, encrypted, and shared with the government.

Mr. Iwamasa should also be viewed as more culpable than Mr. Fleming. He occupied a position of trust with Mr. Perry as his personal assistant; he was involved in securing ketamine and other drugs for Mr. Perry from multiple sources in addition to Mr. Fleming; he worked to fuel Mr. Perry's drug addiction for a much longer period of time than Mr. Fleming did; he served a much more direct role in contributing to Mr. Perry's death than Mr. Fleming, as the person who directly administered drugs to Mr. Perry; and, unlike Mr. Fleming, Mr. Iwamasa had daily exposure to the full extent of Mr. Perry's drug abuse and saw firsthand the traumatic impact that Mr. Perry's drug use was having on him, but yet continued to play a role in enabling his drug use. In addition, there is evidence that Mr. Iwamasa engaged in obstructionist conduct that jeopardized his value as a cooperator, including by destroying evidence on the date of Mr. Perry's death and encouraging Mr. Fleming to delete evidence of their communication. Accordingly, Mr. Fleming's cooperation was critical to buttress the cooperation provided by Mr. Iwamasa and to ensure Mr. Iwamasa stayed the course as an honest cooperator himself.

Kendall Brill
& Kelly LLP

10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604497202

25

DEFENDANT ERIK FLEMING'S SENTENCING MEMORANDUM

### 3.   Mr. Fleming's Cooperation Against Individual #1 and Individual #2

Mr. Fleming also advised the government the role that Individual #1 played in this offense, and, like Mr. Fleming, Individual #1 bears partial responsibility for Mr. Fleming's involvement in the tragic events which unfolded in this case.  Indeed, her role in having Mr. Fleming step into her shoes to procure ketamine for Mr. Perry pulled Mr. Fleming into the totality of the drug trafficking activity he has engaged in over the course of his entire lifetime.  Individual #1 initiated the connection between Mr. Fleming and Mr. Perry that led to Mr. Fleming's involvement in this case; she provided the financial incentive for Mr. Fleming to participate in this case at a time when she knew Mr. Fleming was desperate, depressed, destitute, and experiencing a drug relapse; and she supplied the context about Mr. Perry's existing ketamine use that led to Mr. Fleming's understanding of the role she persuaded him to play in this case.  Mr. Fleming's cooperation fully and accurately described the role Individual #1 played in this case—and, in providing this cooperation against Individual #1, Mr. Fleming provided it against someone with whom he had been in a codependent relationship for three decades.  Accordingly, this was not cooperation against a business associate, a supplier, or someone known to Mr. Fleming only through the circumstances of this case.  Instead, Individual #1 is someone with whom Mr. Fleming shares a close and longstanding personal relationship and regards as family.  The emotional and personal cost of providing truthful cooperation against such an individual cannot be overstated.  Indeed, many criminal defendants, similarly situated, choose not to cooperate against individuals with whom they have such personal relationships.  Mr. Fleming made the opposite choice, as painful as that choice was, and in doing so established his complete commitment to cooperating with the government in the way that was required of him.

As for Individual #2, Mr. Fleming also provided evidence to the government that showed she was a minor, but yet integral, participant in the chain of events

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604497202

26

DEFENDANT ERIK FLEMING'S SENTENCING MEMORANDUM

leading to Mr. Perry's death. She made the critical connection between Ms. Sangha and Mr. Fleming and provided the money for the first "sample" of ketamine purchased from Ms. Sangha and delivered to Mr. Perry. Although admittedly Individual #2 should be considered a less culpable participant than Mr. Fleming in this case, she still played a role in the events as captured by Mr. Fleming's cooperation, and this aspect of Mr. Fleming's cooperation should also be recognized when considering the extent and value of Mr. Fleming's cooperation with the government.

**B.  The Factors Under U.S.S.G. § 5K1.1 Used to Measure the Value Provided by Those Who Cooperate With the Government All Favor Providing Mr. Fleming with a Substantial Sentencing Reduction to Account for His Cooperation**

Mr. Fleming's cooperation and attempts to remedy his wrongful conduct have been truly exceptional. He has earned a sentence that reflects those efforts.

Section 5K1.1 of the Sentencing Guidelines implements the statutory directive under 28 U.S.C. § 994(n) to "assure that the guidelines reflect the general appropriateness of imposing a lower sentence than would otherwise be imposed . . . to take into account a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense." U.S.S.G. § 5K1.1. Under § 5K1.1, once the government files a motion that a defendant has provided substantial assistance in the investigation or prosecution of other persons, the Court "may depart from the guidelines." *Id.* The departure is not limited to the departure recommended by the government, and instead "[t]he appropriate reduction [once a 5K1.1 motion is filed] shall be determined **by the court** . . ." (emphasis added)); *United States v. Udo*, 963 F.2d 1318, 1319 (9th Cir. 1992) (court erred in believing it did not have the authority to depart below the government's recommendation).

Section 5K1.1 directs a Court to determine an appropriate reduction to account for a defendant's substantial assistance to the government based on factors

**Kendall Brill & Kelly LLP**
10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604497202

27

DEFENDANT ERIK FLEMING'S SENTENCING MEMORANDUM

"that may include, but are not limited to, consideration of" any of the following:

(1)    The Court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

(2)    The truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

(3)    The nature and extent of the defendant's assistance;

(4)    Any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance; and

(5)    The timeliness of the defendant's cooperation.

U.S.S.G. § 5.K1.1.  Here, all five of these factors strongly favor that Mr. Fleming receive a significant downward departure.  Indeed, as to some of these factors, Mr. Fleming's cooperation far exceeds that of the typical government cooperator

### 1. **<u>Mr. Fleming's Cooperation Was Significant and Essential, Including to the Government's Ability to Identify, Apprehend, Successfully Prosecute, and Obtain a Lengthy Sentence Against a Much More Culpable Defendant in an Extremely High Profile Case</u>**

As noted above, Mr. Fleming provided both significant and useful assistance to the government.  First, he provided information that directly led to the identification, search, arrest, indictment, and conviction of the most culpable defendant in the case, the person Mr. Fleming identified to the government as the "Ketamine Queen."  Mr. Fleming's cooperation proved critical in both identifying Ms. Sangha's involvement in this case in the first place and in securing her conviction, as Mr. Fleming's cooperation was disclosed in advance of the potential trial she faced and obviously chose to forego in favor of a guilty plea, based, in large measure, on the case the government was able to amass against her as a result of Mr. Fleming's cooperation.  As detailed above, Ms. Sangha was responsible for not just

**Kendall Brill & Kelly LLP**
10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604497202

28

DEFENDANT ERIK FLEMING'S SENTENCING MEMORANDUM

Mr. Perry's death, but also a second death years before. The identification, arrest, prosecution, and conviction of Ms. Sangha—all made possible by Mr. Fleming— has protected the community from the future danger Ms. Sangha would surely have posed if she had not been apprehended and continued to operate her deadly drug emporium in North Hollywood.

Second, Mr. Fleming provided substantial assistance to the government in the prosecution of Mr. Iwamasa, who was directly involved in the events that unfolded leading to Mr. Perry's death. While Mr. Iwamasa provided information to the government prior to Mr. Fleming's initial contact with law enforcement on March 5, 2024, Mr. Iwamasa only pled guilty after Mr. Fleming began cooperating with the government. Furthermore, Mr. Fleming's cooperation provided additional context and corroboration that meaningfully advanced the government's understanding of Mr. Iwamasa's role in the offense—including his direct, hands-on participation in administering the ketamine that ultimately killed Mr. Perry—as well as the role that others played in the offense. (Indeed, unlike Mr. Fleming, Ms. Iwamasa had no visibility into Ms. Sangra's role in the offense.) Additionally, § 5K1.1 allows for cooperation credit for assistance against individuals for whom the government already had sufficient evidence to secure a conviction. Thus, the timing of Mr. Fleming's cooperation against Mr. Iwamasa does not undermine the substantial nature of the assistance Mr. Fleming provided, at a minimum, in keeping Mr. Iwamasa an honest cooperator.

Third, Mr. Fleming provided assistance in describing Individual #1's and Individual #2's criminal conduct related to supplying ketamine to Mr. Perry. Although neither individual was prosecuted in this investigation, § 5K1.1 allows for cooperation credit even when no prosecution or conviction results from the cooperation provided. Here, both Individual #1 and Individual #2 had culpability in the tragic events leading to Mr. Perry's death. While it certainly was exclusively within the government's prerogative to decide whether it was appropriate to pursue

**Kendall Brill & Kelly LLP**
10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604497202

29

DEFENDANT ERIK FLEMING'S SENTENCING MEMORANDUM

criminal charges against either, an appropriate § 5K1.1 departure should nonetheless account for this cooperation provided by Mr. Fleming.

### 2. The Cooperation Mr. Fleming Provided Was Undeniably Truthful, Complete, and Reliable

The truthfulness, completeness, and reliability of Mr. Fleming's cooperation are beyond dispute. Two more culpable defendants in this case, Ms. Sangha and Mr. Iwamasa, both pled guilty to the conduct described by Mr. Fleming; and, at least in Ms. Sangha's case, did so precisely because she knew the information Mr. Fleming provided to the government about her criminal conduct was unassailably damning. This assessment by Ms. Sangha was not wrong. The information Mr. Fleming provided to the government concerning his dealings with her was well-corroborated by the text messages he preserved and shared with the government. Individual #1's and Individual #2's roles in the offense were similarly corroborated by evidence provided by Mr. Fleming, including those same text messages.

### 3. Mr. Fleming's Cooperation Was Extensive, and the Only Reason His Trial Testimony Was Not Required Was Because the Assistance He Provided Allowed the Government to Build an Overwhelming Case Against Ms. Sangha

As addressed above, the cooperation Mr. Fleming provided to the government included attending proffer sessions and a commitment to testify at trial against Ms. Sangha and others if his testimony was needed. This cooperation was pivotal in securing the warrant, indictments, and conviction against Ms. Sangha, as well as the conviction the government secured against Mr. Iwamasa. In addition, consistent with the requirements of his cooperation agreement with the government, Mr. Fleming was ready and willing to attend additional proffer sessions and witness preparation sessions as requested by the government. To the extent Mr. Fleming's cooperation was limited, it is only due to the fact Mr. Fleming's initial debriefings were sufficiently detailed so as not to require many additional meetings, as well as

**Kendall Brill & Kelly LLP**
10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604497202

30

DEFENDANT ERIK FLEMING'S SENTENCING MEMORANDUM

the fact Ms. Sangha, in particular, ultimately pled guilty due to the strength of the case the government was able to build against her due to Mr. Fleming's cooperation.

### 4. Mr. Fleming Faces a Risk of Injury Due to the Highly Publicized Disclosure of His Cooperation with the Government

In the aftermath of the highly-publicized charges in this case, Mr. Fleming was forced to move out of his sister's residence, where he had been living, due to the world-wide attention this case garnered, and Mr. Fleming has intentionally led a largely secluded existence since that point. As a result, Mr. Fleming has thus far managed to avoid direct threats of harm that others blamed for Mr. Perry's death allege they have experienced or threats as a result of his decision to cooperate with the government. However, Mr. Fleming faces a serious risk that good fortune will not hold. His cooperation has not only been disclosed in public court filings in this case, it has been widely reported in the press as well. If Mr. Fleming is placed in custody, he will face the danger that comes with having been branded a government "snitch" in a case where his cooperation with the government has attracted considerable notoriety. Oftentimes the government goes to great lengths to avoid publicly disclosing information concerning government cooperators for this very reason, but, due to the extensive public attention this case has generated, Mr. Fleming's case is a unique outlier in that regard, and Mr. Fleming is going to have to spend the rest of his life on guard for threats posed by those who either take issue with his role in Mr. Perry's death or his decision to cooperate with the government.

### 5. Mr. Fleming's Cooperation Was Immediate and That Immediacy Not Only Brought Finality to This Case, It Did So at an Accelerated Pace

As noted above, Mr. Fleming began cooperating with law enforcement on the very first occasion he had contact with them in this case, and he did so without the benefit of counsel and without knowing the consequences he faced at the time he

Kendall Brill
& Kelly LLP

10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604497202

31

DEFENDANT ERIK FLEMING'S SENTENCING MEMORANDUM

began cooperating.  In quick succession after that moment, Mr. Fleming participated in a lengthy pre-indictment proffer with the government in which he provided a fulsome disclosure of the events that formed the basis of the cases charged against Ms. Sangha, Mr. Iwamasa, and even himself; he waived his right for the case against him to proceed by indictment; and he quickly signed a cooperation plea agreement. This fast turnaround is unusual, especially in the case of a first-time offender, and was valuable in itself.  The government and this Court should reward and incentivize such behavior.  This is especially true here, given the public nature of these proceedings where none of the documents, including Mr. Fleming's cooperation plea agreement with the government are sealed.  Early cooperation is qualitatively different from cooperation that follows indictment, arrest, or the mounting pressure of pending charges.  Mr. Fleming's decision to come forward at the outset of his suspected involvement in this case, before he had any obligation to do so and before the full weight of the government's case had been brought to bear, was extraordinary and deserves meaningful recognition.

Of equal importance, Mr. Fleming also never wavered in his cooperation after committing to assist the government in this very high-profile case.  Without hesitation, he allowed his cooperation to be disclosed immediately and publicly.  His cooperation was unconditional and transparent from the outset, and it remained so throughout.  That consistency gave the government a witness it could rely on completely, which undoubtedly allowed the government to proceed with trial preparation with confidence of prevailing in its case against Ms. Sangha had she elected to put the government to its burden of proving the charges against her.

## V.    THE FACTORS SET FORTH UNDER 18 U.S.C. § 3553(a) FAVOR THE SENTENCE MR. FLEMING SEEKS

A court should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing.  18 U.S.C. § 3553(a); *Kimbrough v. United States*, 552 U.S. 85, 91 (2007) (describing this language as the statute's

**Kendall Brill & Kelly LLP**
10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604497202

32

DEFENDANT ERIK FLEMING'S SENTENCING MEMORANDUM

"overarching provision").  With that in mind, a court must consider the factors set forth at 18 U.S.C. § 3553(a)(1-7), which, when taken as a whole, favor the twelve month split sentence Mr. Fleming seeks.

**A.    <u>The Nature and Circumstances of the Offense and History and Characteristics of Mr. Fleming (§ 3553(a)(1))</u>**

Mr. Fleming's offense is undoubtedly serious.  However, while the Court must consider the nature and circumstances of his offense, it must also consider the context in which it occurred.  Mr. Fleming's offense conduct did not occur in a vacuum.  It coincided with a period of profound personal tragedy in his life—circumstances that do not excuse his conduct, but that provide essential context for understanding how a person of Mr. Fleming's character came to engage in it.  Mr. Fleming's offense represents a stark and painful departure from a life otherwise defined by positive contributions, personal integrity, and genuine care for others.

Mr. Fleming's history reflects a person of strong moral character who has made meaningful contributions to his community and to the lives of those around him.  The letters submitted on his behalf are not form letters or generic expressions of support.  They are detailed, specific, and consistent in their portrait of a man who is honest, empathetic, generous, and genuinely committed to the wellbeing of others.  Those who have worked alongside him, those who have witnessed his struggles, and those who have benefited from his help have all described the same person—someone whose values and character run deeper than and contrary to the conduct that brings him before this Court.  It is also significant that this offense represents a stark departure from Mr. Fleming's life as a whole.  He has no prior criminal history of any note, and again, the conduct at issue coincided with a period of profound personal tragedy—circumstances that help explain, even while they do not excuse, how someone of Mr. Fleming's character came to engage in this offense.

Mr. Fleming has also demonstrated his true character through his cooperation with the government.  That cooperation was not without risk.  It required Mr.

Kendall Brill
& Kelly LLP

10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

DEFENDANT ERIK FLEMING'S SENTENCING MEMORANDUM

Fleming to act with integrity at a time when doing so carried real personal consequences. He did so anyway—not because he was required to, but because he understood it was the right thing to do.

Taken together, the nature of the offense, the context in which it occurred, and the history and characteristics of Mr. Fleming show this is not a case of a dangerous or hardened offender, but of a fundamentally decent man who made serious mistakes during the darkest period of his life, accepted responsibility for his wrongdoing immediately, cooperated with the government and put himself at personal risk by doing so, and has spent every day since working to make amends for his crimes.

### B. The Need for the Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment (§ 3553(a)(2)(A))

Under the circumstances present here, a sentence below Mr. Fleming's Sentencing Guidelines range would not minimize the seriousness of his offense. Mr. Fleming, after all, has never minimized his conduct. He has accepted full responsibility for his conduct, expressed genuine and profound remorse, and taken concrete steps to make amends—not through words alone but through action. The weight of this conviction, the public nature of these proceedings, and the consequences Mr. Fleming has already endured are themselves a reflection of the seriousness of the offense. A federal felony conviction carries consequences that extend far beyond any period of incarceration—consequences that Mr. Fleming will live with for the rest of his life.

Furthermore, of course, § 3553(a) does not ask this Court to impose the maximum punishment consistent with the offense. It asks the Court to impose a sentence sufficient—but not greater than necessary—to achieve the purposes of sentencing. Those purposes include punishment, but they also include rehabilitation, deterrence, and the protection of the public. On each of those

**Kendall Brill & Kelly LLP**
10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604497202

34

DEFENDANT ERIK FLEMING'S SENTENCING MEMORANDUM

measures, the record here speaks powerfully in Mr. Fleming's favor.

Mr. Fleming has not waited to be told to rehabilitate himself.  He has done so, consistently and demonstrably, since the time of his arrest.  He has maintained his sobriety, engaged in meaningful employment, helped others in recovery, performed charitable acts, and cooperated fully with the government.  These are not the actions of someone who needs to be subjected to a lengthy sentence to understand the gravity of his conduct.  He already understands it.  Indeed, he has demonstrated that understanding every day since he began cooperating with the government on March 5, 2024.  A just punishment is one proportionate to the individual before the Court — and the individual before this Court is not a danger, not a recidivist, and not someone indifferent to the harm his conduct caused.

**C.     The Need for Deterrence (§ 3553(a)(2)(B))**

General deterrence does not require the imposition of a Guidelines sentence in every case.  The fact of prosecution, conviction, and a federal criminal sentence — regardless of its length—carries significant deterrent weight, especially in light of the much more severe sentence imposed on the more serious offenders in this case, including Ms. Sangha.  And as to specific deterrence, the record here is clear and compelling.  Mr. Fleming does not need to be subjected to a lengthy sentence to be deterred from future criminal conduct.  His post-offense conduct speaks for itself. He has maintained sobriety, pursued meaningful employment, assisted others in recovery, and engaged seriously with the conditions of his supervision.  There is no basis to conclude that a sentence below the Sentencing Guidelines range, once adjusted to account for his substantial cooperation, would fail to deter Mr. Fleming from future criminal conduct.

**D.     Protection of the Public (§ 3553(a)(2(C))**

Mr. Fleming poses no risk to the public.  There is nothing in his background or his character that suggests any danger to others.  If anything, the record points in the opposite direction entirely.  Since his arrest, Mr. Fleming has devoted himself to

**Kendall Brill & Kelly LLP**

10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604497202

35

DEFENDANT ERIK FLEMING'S SENTENCING MEMORANDUM

helping others—contributing to the establishment of a sober living facility that supports individuals battling addiction, engaging meaningful employment, and working through a 12-step recovery program with the goal of serving as a sponsor. He has been subject to pre-trial supervision for almost two years, almost without incident; he has complied with the rigorous drug testing conditions he has been held to, and maintained verified sobriety during almost the entirety of an extraordinarily difficult and uncertain period in his life; and, as shown by the many strong letters of support that have been shared with this Court, Mr. Fleming has an incredibly strong support network that he can also lean on in the future.

### E. The Need to Avoid Unwarranted Disparities (§ 3553(a)(6))

Section 3553(a)(6) directs the Court to avoid unwarranted disparities among similarly situated defendants. Mr. Fleming is not a typical defendant. His substantial cooperation with the government, his extraordinary personal history and background, and his demonstrated rehabilitation set him apart from others who may have engaged in similar conduct. A sentence that fails to account for these distinguishing characteristics would itself produce an unwarranted disparity — treating an unusual, exceptional case as if it were ordinary.

Moreover, comparing the requested sentence with the other sentences imposed in the cases of those implicated in this investigation, the requested sentence of three months' imprisonment to be followed by nine months in a residential drug treatment center avoids unwarranted sentencing disparities:

- Ms. Sangha was sentenced to 180 months' imprisonment. She operated a large-scale drug trafficking operation out of her North Hollywood home, selling drugs to high-profile Hollywood clients while knowing the deadly risks her conduct posed. As early as 2020, she was directly informed that ketamine she sold had killed a customer, Cody McLaury, yet she continued dealing rather than stopping. Her drugs ultimately contributed to the death of Mr. Perry in October 2023, after which she attempted to cover her tracks by directing co-conspirators to delete text messages. Even then, she continued selling drugs until law enforcement searched her home and found methamphetamine,

**Kendall Brill & Kelly LLP**
10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604497202

36

ketamine, cocaine, and other substances. Unlike Mr. Fleming, she never provided substantial assistance in the investigation or prosecution of another to the law enforcement. 24-cr-236-SPG, Dkt. No. 127 (Government Sentencing Memorandum).

- Dr. Plasencia was sentenced to 30 months' imprisonment. Dr. Plasencia, a physician, repeatedly sold ketamine to Mr. Perry for profit, exploiting Mr. Perry's well-known history of addiction rather than acting in his best medical interest. From the moment he met Mr. Perry, Dr. Plasencia was focused on maximizing his profit, and he continued selling ketamine even after witnessing Mr. Perry suffer an adverse reaction to its use and knowing the drug was being administered by an untrained personal assistant with no medical oversight. While the ketamine that ultimately caused Mr. Perry's death on October 28, 2023 was not supplied by Dr. Plasencia, the prosecutors argued his conduct contributed to Mr. Perry's death by feeding Mr. Perry's addiction to the point of his death and constituted a serious betrayal of his duties as a physician. Unlike Mr. Fleming, he never cooperated with law enforcement. 24-cr-236-SPG, Dkt. No. 98 (Government Sentencing Memorandum).

- Dr. Mark Chavez was sentenced to no term of imprisonment, with 3 years' supervised release, with special conditions of 8 months' home confinement and a condition of 300 hours of community service. Dr. Chavez—a licensed physician with DEA authorization to prescribe controlled substances—knowingly participated, with Dr. Plasencia, in the illegal scheme to distribute ketamine to Mr. Perry outside the scope of legitimate medical practice. Dr. Chavez sourced ketamine for Dr. Plasencia to administer and sell to Mr. Perry, obtaining the drugs through fraudulent prescriptions and false certifications to wholesale distributors. Despite being aware that Mr. Perry was receiving dangerous doses of ketamine without proper medical supervision, that Mr. Perry had a health condition that "could increase the risk of taking ketamine outside of a clinical setting without medical observation," and that Dr. Plasencia was leaving vials with Mr. Perry for unsupervised self-administration, Dr. Chavez continued supplying ketamine until a Medical Board investigation prompted him to stop. In total, he transferred at least 22 vials of ketamine and 9 lozenges to Dr. Plasencia, all intended for Mr. Perry. When subsequently interviewed by DEA investigators, Dr. Chavez made false statements and concealed evidence. Dr. Chavez later cooperated with the government, although his cooperation was far less extensive than Mr. Fleming's cooperation,

Kendall Brill & Kelly LLP

10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604497202

37

DEFENDANT ERIK FLEMING'S SENTENCING MEMORANDUM

as he earned only a two-level §5K1.1 recommendation from the government. 24-cr-492-SPG, Dkt. No. 34 (Government's Sentencing Memorandum).

- Mr. Iwamasa has not yet been sentenced.  Mr. Iwamasa, who served as the live-in personal assistant to Mr. Perry, both procured and administered ketamine to Mr. Perry—despite knowing that he had a history of addiction and had previously sought help maintaining sobriety.  Mr. Iwamasa coordinated and paid for the liquid ketamine and ketamine lozenges.  Mr. Iwamasa—with no medical training—was personally instructed by Dr. Plasencia on how to administer intramuscular injections and proceeded to inject Mr. Perry multiple times daily in the weeks leading up to his death, even after witnessing at least two prior instances of  Mr. Perry losing consciousness and one severe adverse reaction.  On October 28, 2023, Mr. Iwamasa administered three ketamine injections to Mr. Perry, before he entered the jacuzzi at his home.  Mr. Iwamasa then left the residence to run errands, and upon returning, found Mr. Perry face down in the jacuzzi, deceased.  24-cr-408-SPG, Dkt. No. 7 (Plea Agreement).

- Individual #1 was never charged.  Individual #1 was the catalyst for Mr. Fleming's involvement in the illegal ketamine distribution that led to Mr. Perry's death. Although Individual #1 had introduced Mr. Fleming to Perry approximately seven years before Perry's death, it was Individual #1 who re-activated that connection in October 2023, reaching out to Mr. Fleming on October 1, 2023, to solicit his help obtaining ketamine for Mr. Perry.  She followed up by phone, offering to split a $1,000 payment with Mr. Fleming as a financial incentive to participate in finding ketamine for Mr. Perry—and doing so at a time when Mr. Fleming was desperate, destitute, and in the midst of a drug relapse.  In effect, Individual #1 stepped back from her own role as Mr. Perry's ketamine procurer and handed that role off to Mr. Fleming, making her directly responsible for pulling Mr. Fleming into the criminal conspiracy that ultimately resulted in Mr. Perry's death.

- Individual #2 was never charged.  Individual #2 served as the critical link between Mr. Fleming and Ms. Sangha.  When Mr. Fleming—who had no prior drug dealing history—needed a source of ketamine after being recruited by Individual #1, he turned to Individual #2, who directly connected him to ketamine supplier Ms. Sangha, with whom Individual #2 already had a prior supplier relationship.  Individual 2 did not merely make an introduction and step away—she jointly forwarded

Kendall Brill
& Kelly LLP

10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

photographs of ketamine from Ms. Sangha to Mr. Perry, and she shared in the cost of obtaining the first sample of ketamine provided by Ms. Sangha to Mr. Perry.

The requested sentence of three months in custody followed by nine months in a residential drug treatment center reflects Mr. Fleming's relative culpability compared to these individuals. On the mitigating side, Mr. Fleming does not bear the aggravating weight of being a medical professional who betrayed his oath; he was acting out of genuine desperation, further fueled by his own addiction, when recruited into this offense; and his role in the offense was more limited in scope than others who have already been sentenced (especially as compared to Ms. Sangha and Dr. Plasencia). At the same time, Mr. Fleming fully recognizes that his conduct was not without consequence: he was part of the supply chain that ultimately delivered the fatal doses of ketamine to Mr. Perry, a serious aggravating factor that is already reflected in Mr. Fleming's Sentencing Guideline range, which is higher than in the case of either Dr. Chavez or Dr. Plasencia. What further distinguishes Mr. Fleming is the nature of his cooperation, which surpasses that of any of the defendants sentenced in this matter to date and warrants meaningful consideration by this Court. The recommended sentence takes all of this into account. It reflects greater punishment as compared to those who were never charged and will face no consequences for their actions, and as compared with Dr. Chavez, who was sentenced to home detention. It also reflects that Mr. Fleming's conduct falls far below the most serious defendants implicated in this case—Ms. Sangha and Dr. Plasencia—who did not cooperate with the government.

## VI.   CONCLUSION

Based on the foregoing, the defense respectfully requests that the Court sentence Mr. Fleming to three months imprisonment to be followed by a three year period of supervised release, which includes, as a condition, a nine month period of confinement in a residential drug treatment program where Mr. Fleming will be

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604497202

39

DEFENDANT ERIK FLEMING'S SENTENCING MEMORANDUM

allowed to continue the substance abuse treatment he has been addressing for the past two years and continue providing the positive impact on society that has been a hallmark of his post-offense rehabilitation.

DATED:  April 29, 2026                    KENDALL BRILL & KELLY LLP

By:  _____/s/ Robert E. Dugdale_____
     Robert E. Dugdale
     Jeffrey M. Chemerinsky
     Attorneys for Defendant Erik Fleming

**Kendall Brill & Kelly LLP**
10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604497202

40

DEFENDANT ERIK FLEMING'S SENTENCING MEMORANDUM

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 10100 Santa Monica Blvd., Suite 2500, Los Angeles, CA 90067.

On April 29, 2026, I served true copies of the following document(s) described as **DEFENDANT ERIK FLEMING'S SENTENCING MEMORANDUM** on the interested parties in this action as follows:

Michelle Wang
United States Probation Office
Santa Ana, California
Phone: (714) 338-2919
E-Mail: Michelle_Wang@cacp.uscourts.gov

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused the document(s) to be sent to each interested party at the email addresses listed above or on the attached service list. I

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on April 29, 2026, at Los Angeles, California.

/s/ Katie Yamashita
Katie Yamashita

Kendall Brill
& Kelly LLP

10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067